IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ICE TRAINING CENTER,**<br>           **Plaintiff,** | **CIVIL ACTION** |
| v. | |
| **FOREST RIVER INC. AND**<br>**MOTORHOMES 2 GO BY TERRYTOWN,**<br>           **Defendants.** | **NO.  18-4819** |

## MEMORANDUM OPINION

Plaintiff Ice Training Center brings this action against Defendants Forest River, Inc. and Motorhomes 2 Go by Terrytown for claims related to an allegedly defective motorhome purchased in Michigan.  Specifically, Plaintiff asserts claims of (i) revocation of acceptance of contract, (ii) violations of Pennsylvania's Unfair Trade Practice and Consumer Protection Law, 73 P.S. §§ 201–1, *et seq.*, (iii) violations of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, and (iv) breach of warranty.  Each claim is asserted against both Defendants.

This suit was initially brought in Pennsylvania state court.  Defendants removed, and now move to transfer to the Western District of Michigan (Southern Division), citing a forum selection clause in the motorhome purchase agreement.  For the reasons that follow, the motion shall be granted.

### I.     BACKGROUND

Plaintiff is a business located in Pennsylvania.  Defendant Motorhomes 2 Go by Terrytown is a motorhome vendor located in Michigan.  Defendant Forest River, Inc. is a motorhome manufacturer and distributer located in Indiana.

In June of 2018, Plaintiff traveled from Pennsylvania to Michigan and purchased a motorhome from Defendant Motorhomes 2 Go.  According to the complaint, "[t]he motorhome

was manufactured by Forest River and was warranted by both Forest River and Motorhomes 2 Go." According to Plaintiff, the motorhome broke down in Ohio on the way back to Pennsylvania. Plaintiff attempted to revoke acceptance and return the motorhome, but Defendant Motorhomes 2 Go refused. Plaintiff avers that, since then, the motorhome has suffered from numerous other defects and maintenance issues, and has been serviced in Ohio, Pennsylvania, New Jersey and Maine.

Defendants now seek to transfer this action to the Western District of Michigan pursuant to 28 U.S.C. § 1404(a), citing the forum selection clause in the sales agreement signed by Plaintiff and Defendant Motorhomes 2 Go. This term provides that,

> Should any dispute arise out of, or relate to, this Agreement, the RV sold pursuant to this Agreement, and/or service work on the RV, those disputes shall be governed by the substantive laws of the state of Michigan, without regard to conflict of law rules. Buyer also agrees that the exclusive jurisdiction for deciding any dispute shall be in Kent County, Michigan, as that is the location of Dealer's main office. This means that if Buyer files a claim against Dealer about anything with the RV, Michigan law will control that claim, and Buyer will file any claim in Kent County, Michigan.

Defendants acknowledge that Defendant Forest River did not sign and is not bound by this agreement.

**II.    ANALYSIS**

Generally, in evaluating motions to transfer under Section 1404(a), "a district court may transfer a civil action to another district where the case might have been brought, or to which the parties have consented, for the convenience of the parties and witnesses and in the interest of justice." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018). "Factors the court must consider include the three enumerated under the statute—convenience of the parties, convenience of the witnesses, and the interests of justice—along with all other relevant private and public factors, including the plaintiff's choice of forum and the local interest

in deciding local controversies close to home." *Id.* "Courts consider these factors to determine, on balance, whether the litigation would 'more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *Id.* (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)).

However, following the Supreme Court's decision in *Atlantic Marine*, "the traditional balancing test is modified when a forum selection clause applies to a dispute." *Id.* (citing *Atlantic Marine Constr. Co. v. U.S. District Court*, 571 U.S. 49, 63 (2013)). "Specifically, district courts (1) must give no weight to the forum preferred by 'the party defying the forum-selection clause'; (2) must deem the private interests to 'weigh entirely in favor of the preselected forum' because the parties agreed to the preselected forum and thereby waived the right to challenge it as inconvenient; and (3) must proceed to analyze only public interests." *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402 (3d Cir. 2017) (quoting *Atlantic Marine*, 571 U.S. at 581-82). "[W]ith these modifications to the typical § 1404(a) analysis, district courts should enforce valid forum-selection clauses 'in all but the most unusual cases.'" *Id.* (quoting *Atlantic Marine*, 571 U.S. at 583) (brackets omitted).

The analysis is further complicated where, as here, some but not all parties are signatories to a forum selection clause. The Third Circuit recently announced a four-step framework governing such inquiries:

> Step One: Forum-Selection Clauses.  At the first step, the court assumes that *Atlantic Marine* applies to parties who agreed to forum-selection clauses and that, in all but the most unusual cases, claims concerning those parties should be litigated in the fora designated by the clauses. . . .
>
> Step Two: Private and Public Interests Relevant to Non-Contracting Parties.  Second, the court performs an independent analysis of private and public interests relevant to non-contracting parties, just as when adjudicating a § 1404(a) transfer motion involving those parties in the absence of any forum-selection clauses. . . .  If, at this juncture, the Step One and Step Two analyses point to the same forum, then the court should allow the case

3

>to proceed in that forum, whether by transfer or by retaining jurisdiction over the entire case, and the transfer inquiry ends there.
>
>Step Three: Threshold Issues Related to Severance.  Third, if the Step One and Step Two analyses point different ways, then the court considers severance. . . .  [I]n cases where severance is neither clearly warranted nor clearly disallowed and is therefore committed to the court's discretion (such as when there are no indispensable parties or defects in jurisdiction, venue, or joinder), the court goes on to select the appropriate fora based on a combination of interests addressed at the next step.
>
>Step Four: Efficiency and Non-Contracting Parties' Private Interests. … [A] district court exercises its discretion . . . in choosing the most appropriate course of action, but it measures its decision against two key sets of interests.  On the one hand, the court considers efficiency interests in avoiding duplicative litigation, taking into account case management techniques that can reduce inefficiencies accompanying severance, as well as any other public interests that may weigh against enforcing a forum-selection clause, On the other hand, the court also considers the non-contracting parties' private interests and any prejudice that a particular transfer decision would cause with respect to those interests. . . .  Only if it determines that the strong public interest in upholding the contracting parties' settled expectations is overwhelmingly outweighed by the countervailing interests can the court, at this fourth step, decline to enforce a valid forum-selection clause.

*Id.* at 404-05 (internal citations and punctuation omitted).

Here, neither party fully addresses the application of the four-factor framework to this matter.  Nonetheless, its application is clear: Michigan is the most appropriate forum.

Plaintiff does not contest that the forum selection clause is valid or that its claims fall within the scope of the clause.  Thus, at step one, the Court assumes that *Atlantic Marine* applies to the claims between the signatories—Plaintiff and Defendant Motorhomes 2 Go.  Applying that rubric, the public factors cited by Plaintiff in favor of litigation in Pennsylvania simply do not present a "most unusual case[]," as required to defeat a forum selection clause.  *Id.* at 402.  While Plaintiff points out that numerous witnesses—namely, mechanics that have serviced the motorhome—reside in or near this District, it appears that other such witnesses reside in Ohio, where the motorhome first broke down, and further afield, in Maine.  Thus there are no particular efficiency gains to adjudicating this dispute in Pennsylvania over Michigan.  Further, since

4

Plaintiff does not contest that Michigan law governs this suit, the courts of Michigan have the greater facility and interest in adjudicating this matter.[1]

Step two, consideration of the private and public interests relevant to the non-contracting party, Defendant Forest River,[2] also tilts in favor of transfer.  Defendant Forest River notes that it is a resident of Indiana, and that it finds Michigan to be a more convenient forum compared to Pennsylvania.  Accordingly, its private interests militate in favor of transfer to Michigan.

Since both Steps One and Two are aligned, the Court need not proceed further.  Nonetheless, Steps Three and Four also reinforce that the Western District of Michigan is the more appropriate forum.  At Step Three, severance is not warranted.  No party claims any venue or jurisdictional defects here or in the Western District of Michigan.  Further, Plaintiff asserts all claims against both Defendants, and thus any severance would necessarily result in duplicative litigation.  Finally, at Step Four, there are no "overwhelming[] . . . countervailing interests" that might outweigh "the strong public interest in upholding the contracting parties' settled expectations." *Id.* at 405.

Applying the law of this Circuit, this case must be transferred to the Western District of Michigan.  An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____
**WENDY BEETLESTONE, J.**

---

[1] Plaintiff brought one Pennsylvania specific claim, for violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law.  Nonetheless, the four other claims would be governed by Michigan law, and thus Michigan law would apply to the bulk of this suit.

[2] While Plaintiff asserts that the Court should consider its private interests—namely, the hardship of litigating in the comparatively distant Michigan—the Third Circuit clearly directed that "courts at Step Two should consider the private and public interests of the parties who have *not* signed a forum-selection agreement." *Id.* at 404 (emphasis in original) (internal quotation marks omitted).  Thus Plaintiff's private interests shall not be considered.